### No. 11,472.

### L. F. MONTGOMERY ET ALS. VS. MARYDALE LAND AND LUMBER COMPANY, LIMITED, AND ALEX. BLANCHE.

### BOARD OF COMMISSIONERS, FIFTH LOUISIANA LEVEE DISTRICT, WARRANTORS.

Half of the property was assessed in the name of the owner many years after his death, although, by the records of the clerk's office, it was made public that his succession was opened, the property inventoried and an executor appointed.

When the fact is known that the owner is dead and his succession is opened, the assessments should be made in the name of his " estate."

The certificate of a tax collector to the assessment roll applies, under the terms of the statute, only to those who are notified by publication.

A certificate to establish that notice was given by mail to a non-resident tax-payer will not be held conclusive. It must yield to absolute proof.

The evidence is conclusive that no sufficient notice was ever mailed to plaintiffs.

Statutes to divest title must be strictly pursued.

The requisite notice must be given according to statute.

Notice being a condition precedent to the validity of the sale, the absolute want of notice is not cured by the prescription of three or five years.

The deed of sale by the warrantor contained a stipulation of no warranty.

The buyer, not being aware of the danger of eviction, is entitled to recover the price paid.

APPEAL from the Seventh District Court, Parish of Tensas. *Montgomery, J.*

———

*R. H. Snyder, Jr.*, for Plaintiffs and Appellees:

An assessment of real estate which does not describe on its face or by reference to accessible public documents the property intended to be assessed is null and void. Wilson vs. Marshall, 10 An. 329.

It is indispensable that the assessment furnish the means of identifying the land assessed. Saunders on Taxation, 104.

The assessment is invalid unless it gives such a description of the lands that the parts of the government subdivisions belonging to the tax-payer can be ascertained and separated from the parts of the same subdivisions belonging to other persons. Person vs. O'Neal, 32 An. 228.

Montgomery et als. vs. Land and Lumber Co. et al.

The legal assessment of realty owned in indivision by two or more persons requires that each owner shall be separately assessed ;with his undivided interest in the whole. Saunders on Taxation, 108; Hays vs. Viator, 33 An. 1165.

The assessment of realty in the name of a person long since dead, whose will has been probated in the parish where the property is situated, and where the tax sale was made, is null and void. Stafford vs. I witchell, 33 An. 520; Carter *et al.* vs. City, 33 An. 818; Succession of Mercier, 42 An. 1139; Norres vs. Hays, 44 An. 912.

A tax sale made since the adoption of the Constitution of 1879, where no notice was given to the tax debtors, is absolutely null and void. Article 210 of the Constitution; Breaux vs. Negrotto, 43 An. 428; Norres *et al.* vs Hays *et al.*, 44 An. 912.

When it appears that the description on the assessment roll is too vague and indefinite to operate a conveyance of title or to serve as a basis of title, the assessment is null. Gibson vs. Hitchcock, 37 An. 214.

Article 210 of the Constitution solemnly declares that the property of an individual shall not be forfeited for the non-payment of taxes, unless notice shall have been first given to such individual.

Article 210 contemplates some effective notice, such as the mailing to and the receipt by the tax debtor of the notice.

This court has within the past year defined the legislative term "unknown owner," and has declared such person to be one whose postoffice address is unknown to the tax collector.

---

*Clinton & Garrett* Attorneys for the Defendants and Appellants :

As the main defence set up by the defendant company against plaintiffs has been adopted by the warrantors, and as those branches of the case will be fully presented by the warrantors, we, as counsel for the Marydale Company, will confine ourselves to the call in warranty, for the reason that if the warrantors prevail against the plaintiffs' demands, the result of this litigation would not affect the said Marydale Company.

Where there is a clause of no warranty in a deed, in case of eviction the vendee can recover the price paid, unless the buyer was, at the time, aware of the danger of eviction and purchased at his peril and risk. C. C., Arts. 2505, 2542, 1965; 5th Robinson's Reports, 76; 3 An. 326; 5 An. 314, 667, 684; 6 La. 550; 16 An. 45; 37 An. 374.

In order to escape liability to the purchaser for the restitution of the price paid, the vendor should, as a rule, affirmatively establish actual knowledge by the former of the danger of eviction, either by direct proof or by implication from collateral facts so strong as to be equivalent to positive evidence. See 37 An. 274; R. C. C. 2542, 2505, 1965; 3 An. 326; 16 An. 45; 17 An. 50; 5 R. 76; 5 An. 314, and cases cited in 37 An. 274; see also Meyer vs. Farmer, 36 An. 789.

In this case there is no evidence whatever that would go to show that under the plain provisions of our law the warrantors can escape the liability of paying the price and taxes, which the Marydale Company had paid for the property, in case of their title being annulled as derived from the Levee Board. To hold otherwise would have the effect of allowing the Levee Board to " get something for nothing," which would be a clear vio ation of our law in matters of sales of property.

Montgomery et als. vs. Land and Lumber Co. et al.

The buying of "rights and pretensions" is somewhat in the nature of an aleatory transaction, when an inadequate price is paid in the hope of thereby acquiring something which may be of far greater value than the price, and the distinction between, and the true nature of such transactions can more readily be determined by the consideration paid than by any other.

In the instant case it is not declared in the act of sale that the vendee was aware of the danger of eviction, or that he purchased at his own risk and peril; nor is there any evidence in the record tending to show that the purchase was made under either of such conditions.

The Code, as construed by this court, goes so far as to extend protection to one who purchases, aware, at the time of the sale, that the thing sold belonged to another, even where there is exclusion of warranty. While it refuses by implication damages in case of eviction, it recognizes the equitable right to recover the price, unless it was excluded by formal stipulation, or the purchaser bought expressly at his peril and risk. 37 An. 274.

---

*Elam & Dale*, Attorneys for the Board of Commissioners Fifth Levee District, Warrantors, Appellants:

In 43 An. 877 the court says: ' The ground for illegality in the assessment complained of is that it was assessed to James Surget who died in 1856, and that his succession is still opened. The heirs have never been put in possession of the property of the estate. The plaintiff contends that the property ought to have been assessed to the heirs, as they accepted the succession unconditionally. The heirs are non-residents, and there is no evidence showing that they are in possession of the estate, as joint owners, or that there is any record of this fact, if it existed, in Jackson parish. The property was properly and legally assessed." 33 An. 816; 28 An. 240; 31 An 591; 38 An. 807.

An assessment according to the records was sufficient, though erroneous, provided the assessor had no information at his command by which to make a correct assessment. 42 An. 1127.

A different rule governs as to the validity of the assessment, when the informalities in the assessment are occasioned by the tax-payer than when occasioned by the assessor.

It is by law expressly made the duty of each tax-payer, whether as owner, agent or in other capacity, to give the assessor a list of the property, showing to whom it belongs, in what capacity it is held, a correct description of the property and the postoffice address of the tax-payer. If this legislative utterance is not to be regarded as an empty sound, the tax-payer should not to be heard to complain of an erroneous assessment, when such error has been occasioned by his neglect of duty, and when it is shown that the assessor has exercised due diligence to make a correct assessment. Especially ought this to be so when the tax-payers are non-residents, have no agents in the State, have abandoned the property and neglected their duty as to filing lists, showing owners and giving postoffice address, as in this case; and when the deed records show it to be in the name of persons not the owners.

The records the law requires the assessor to examine are not the succession records. Act 96 of 1882, Sec. 8.

The defendant company demands, in the event the tax title is annulled, that it recover judgment against warrantor for the purchase price. In the deed by

406    SUPREME COURT OF LOUISIANA.

Montgomery et als. vs. Land and Lumber Co. et al.

warrantor to defendant company it is stated: "It is expressly understood that this act shall have the force and effect of a quit-claim deed. This vendor only warranting as to such title as may be vested in it." The warrantor, therefore, if you hold the tax title invalid, is under no obligation to refund the price, as the company bought at its peril and risk (C. C. 2505), and waived all right to demand a return. Besides there is no law authorizing the warrantor to warrant the title, and as it did not have the power it can not be held in warranty.

The opinion of the court was delivered by

BREAUX, J. This is a petitory action in which the plaintiffs, alleging that they are the owners of " Cowslough " plantation, pray to be decreed the owners and placed in possession.

The property was acquired jointly by L. F. and J. J. Montgomery.

At the latter's death, in 1868, the title of one-half remained in L. F. Montgomery, and the title of the other half vested one-fourth in the widow and survivor in community of A. J. Montgomery and the other fourth in his children, eight in number.

His will was admitted to probate in Tensas parish, in 1868.

An inventory was made.

L. F. Montgomery and the widow of the testator qualified, under the will, as executors.

The property was assessed for the taxes of 1881, 1882, 1883 and 1884 in the name of L. F. and A. J. Montgomery.

It was adjudicated to the State of Louisiana in 1885, for the taxes of those years, and subsequently it was transferred by the State to the Fifth Louisiana Levee District warrantors.

The Marydale Land and Improvement Company, holding under the Louisiana Levee District answers that the property was legally assessed for many years prior to the adjudication to the State, during which plaintiffs failed to pay their taxes and to exercise any rights, of ownership.

It pleads prescription and called the Levee Board, in warranty, to defend the title, and asked, in case of its eviction, that it (the defendant company) recover judgment against its vendor for the price and taxes paid.

The co-defendant Blanche also, pleads prescription—that of two, three and five years, and prays for judgment against his vendor, the Marydale Company, for the price and taxes he paid, on the portion of land bought by him.

The defence of the warrantor is substantially the same as that of the defendant.

The "Levee Board" warrantors, in their answer, as against the defendant, the Marydale Company, deny that it is bound in warranty, and contend that it is not obliged to return the price in case of eviction.

The deed of sale by the Levee Board contains a clause of no warranty in case of eviction, and it is relied upon by it as being an effective bar to the demand of the Marydale Company, vendee, for the return of the price.

The record does not disclose with certainty that any notice was given to L. F. Montgomery to pay his taxes prior to the sale, either by postal card or publication.

The evidence of the notice is also uncertain as to the half of which A. J. Montgomery was the owner.

Judgment was rendered recognizing plaintiff's ownership of the property, and there was judgment for defendants against warrantors for the purchase price paid and a judgment against the plaintiffs for the amount of taxes paid by defendants on the property.

The terms of the judgment reserved in addition certain rights to the defendants.

From this judgment the defendants and warrantors appeal.

The following propositions, assailing the tax title, present the important issues of the case:

1. The assessment of property in the name of a person long since dead, whose succession has been opened, inventory made and executors appointed, in the parish where the property is situated and where the tax sale was made, is null and void.

2. A tax sale made since the adoption of the Constitution of 1879, without notice to the tax debtors, is null and void.

## THE ASSESSMENT.

Although it must have been known that A. J. Montgomery was dead, the assessment of his property was made in his name.

His will was probated in 1868, executors were appointed to execute the will, an inventory had been taken. The proceedings were recorded in the succession record of the parish.

They were ample notice to the assessing officer that the co-proprietor of a large tract of land was no longer alive.

The property was sold under Act 96 of 1882, and the amending revenue act of 1884.

Under neither can sanction be found for assessing property in the name of the deceased after the assessor has become aware of the death of the owner.

The succession, so far as the record discloses, had not been accepted by the heirs; therefore the assessor could not be expected to assess the property in their names.

But the words " estate of" were essential under the circumstances to identify the property as required and to complete the assessment.

It has never been held, as contended in the case at bar, under the acts above cited in any case that the words " estate of" are of no importance in assessing property of a succession prior to acceptance by the heirs.

In Sewell vs. Watson, 31 An. 591, Justice White, for the court, said: " The property stood upon the public records as that of James H. Coleman, and was so assessed. It was vacant property, and the owner did not reside in the parish. The assessor, in listing the property for taxation, could have assessed it in no other way than as it stood on the records of the country, unless it be considered that it was his duty to be informed of facts not public, not to be ascertained from the condition of the property, or from its occupants, for it had none."

The inference is plain, if it was publicly known that the owner was dead the assessment should not have been made in his name under the revenue act of 1882.

By special enactment (not contained in the act of 1882) it is different under the act of 1890, which can not apply to this case. See revenue act of that year, Sec. 25.

The question received consideration in a well-considered case, in which an assessment made in the name of an owner who had been dead for ten years was decreed illegal.

The court states that the name of the owner had been formally notified to the proper officers, and was ascertainable from the archives of their own offices. Stafford, Executor, vs. Twitchell, 33 An. 524.

It is argued by warrantors' counsel that the case of Kent vs. Brown and Learned, 38 An. 807, is a comparatively recent utterance of the court upon the subject, and that it is conclusive upon the point under discussion.

The facts in that case are different from the facts in the case at bar, as made manifest from the following quotation taken from the cited case:

" We must take judicial cognizance of the state of war in which the country was then engaged; of the closing of the courts during several years; of the difficulty, and at times of the impossibility, of communicating between the parishes of Concordia and Carroll, and from the records it appears that no positive information could be had from the records of Concordia of the whereabouts, or as to the fact as to whether he was dead or alive. From the only sources of knowledge within the reach of the assessor, he had no alternative but to list the property in the name of that owner to whom it had been assessed, aud who had paid the taxes thereon for years past. These circumstances, which are entitled to great weight, entirely remove this question from the rule or scope of the two decisions mainly relied on by plaintiff's counsel."

The two cases referred to are: The Stafford case, 33 An. 520, and the Hickman case, 35 An. 1086.

Neither of these cases was overruled by the Kent case, 38 An. 807.

The facts were different, and the court so states. The correct rule is indicated in Cosgrove vs. City of New Orleans, 33 An. 816.

The assessment was regular, for the property had been assessed in the name of an estate; there being no proof of record that the heirs had been placed in possession.

In the case at bar the records, which should not have been ignored by the assessor, years after the assessor's death, showed that the property was that of the estate of A. J. Montgomery.

It should have been assessed in those words, in so far as the property was owned by the succession. See also the Surget case, 43 An. 877.

We at this time pass the plea of prescription and take up the question of notice to the tax-payer.

Although this plea is urged as applying to both the informality in the assessment and the want of notice, we will hereafter decide it only in so far as it applies to notice, for it disposes of the case.

### NOTICE TO THE TAX-PAYER TO PAY TAXES ASSESSED.

The Constitution, Art. 210, ordains that, " after giving notice to the delinquent in the manner to be provided by law."

That article, as touching the points involved, has been interpreted by this court in several decisions.

The leading case is that of Breaux vs. Negrotto, 43 An. 438, from which we quote: "The Constitution and Acts Nos. 77 of 1880 and 96 of 1892 require notice to be given to the tax delinquents. No notice was given. It was an essential prerequisite to the sale of the property," and approvingly Stafford's Executor vs. Twitchell and *In re* Douglas, 41 An. 765 are cited.

This conclusion was affirmed in Norres vs. Hays, 44 An. 912.

The tax collector did not, it seems, mail notice to L. F. Montgomery at the postoffice of his residence. The names were properly given L. F. and A. J. Montgomery, and would have bound the surviving partner had it been mailed to the postoffice of his residence. The assessment itself against L. F. Montgomery is legal and binding and the taxes are due.

The sheriff appended a certificate to the tax roll for the years for which the taxes were due, certifying that notice had been given as required.

Had he testified that the certificate was correct, his oath, together with the presumption that sustains the regularity of an officer's act, would have proved the notification, against which the mere denial of the tax-payer, as a witness, would not suffice to set it aside.

But the tax collector testified that he had sent the notice to another postoffice than that of the tax-payer's residence.

The notice to the other owners was equally as defective. It was addressed to A. J. Montgomery, and not "his estate," and mailed to that address, to be delivered at Canton, Miss.

The heirs not having accepted the succession, and being, as to the property, unknown, an advertisement in the name of the estate of A. J. Montgomery would have bound them. The notice to them was not in the required form, and the attempt to notify them failed.

Without further legislation, we are not authorized to hold otherwise than we have.

### PLEA OF PRESCRIPTION.

It is argued by counsel for warrantors that the plaintiffs had, long before the tax sales, abandoned the ownership and possession of the property.

That they had acquired a tax title, duly recorded, that placed plaintiffs upon inquiry.

That the purchase alone gave them (the warrantors) possession.

Our examination of the records does not satisfy us that the warrantors took actual possession.

The facts regarding the alleged abandonment of plaintiffs consist in their neglect to pay their taxes, and of their not being in corporeal possession.

These facts did not have the effect of impairing their rights as owners.

The notice is a condition precedent, the want of which is not cured by the prescription pleaded.

The notice was insufficient and entirely irregular, and as such, even the purchaser in good faith is without right to avail himself of a term of prescription less than ten years.

The following is one of the last utterances of this court upon this subject:

" Hence our opinion in Barrow vs. Wilson was error, to the extent of holding that, in respect to this notice, the prescription of three and five years was tenable."   43 An. 441.

## RETURN OF PRICE BY WARRANTORS.

The defendants demand, in the event that the tax title is annulled, that they recover judgment against warrantors for the purchase price.

In the deed by warrantor to the Marydale Land and Lumber Company, Limited, it is stated:

" It is expressly understood that this act shall have the force and effect of a quit-claim deed.   This vendor only warranting as to such title as may be vested in it."

The warrantors' contention is that they are under no obligation to refund the price, and they claim that the defendant company bough[t] at its risk and peril, and waived, thereby, all right to demand a return.

The vendor who has received the price must return it, because it is in his hands without cause.

The purchaser has paid it in execution of a sale that is null.

The record does not disclose that the vendee was aware at the time of the sale of the danger of eviction.

The stipulation of no warranty is effective in relieving the vendor

Chapoton vs. Creditors.

from the payment of damages, but does not release him from the obligation of restituting the price.

Warranty of title is the rule, and always governs unless waived.

The express waiver may include the waiver of the restitution of the price, in case of eviction, and the sale made at the entire risk of the purchaser.

A waiver, however, silent as to the restitution of the price, does not exclude the obligation of returning the price in event of eviction, unless the purchaser had knowledge of the causes of eviction.

In other words, a no warranty of title clause in a deed, without knowledge on the part of the vendees of the causes of eviction, and without an express waiver of the return of the price, leaves the vendee, after eviction, a creditor for the price paid.

### AN ESSENTIAL.

The obligation of the tax-payer to contribute to the expenses and necessities of the government, when enforcement becomes necessary, is subordinated to certain requirements that must be observed in order to divest him of his property.

In case of formality, not of the essence, he has no remedy to recover after his property, under a tax title, has passed into the hands of an innocent purchaser.

The decisions heretofore have treated notice as an essential.

We adhere to the principles heretofore enunciated.

We therefore must affirm the judgment.

It is ordered, adjudged and decreed that the judgment is affirmed at appellants' costs.